UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
………………………………………………………………….

| | |
|---|---|
| AJAY BAHL, | **AMENDED**<br>**COMPLAINT** |
| Plaintiff, | |
| - against - | *14 Civ. 4020 (LDW)(SIL)* |
| NEW YORK COLLEGE OF OSTEOPATHIC MEDICINE<br>OF NEW YORK INSTITUTE OF TECHNOLOGY<br>("NYCOM-NYIT" or "NYCOM");<br>THE NATIONAL BOARD OF OSTEOPATHIC<br>MEDICAL EXAMINERS ("NBOME");<br>and NORTH SHORE LONG ISLAND JEWISH<br>PLAINVIEW HOSPITAL ("NS-LIJ"), | **PLAINTIFF DEMANDS**<br>**TRIAL BY JURY** |
| Defendants. | |

………………………………………………………………...

Plaintiff, AJAY BAHL, by and through his attorneys, Kevin T. Mulhearn, P.C.,

complaining of the Defendants, hereby alleges that:

## JURISDICTION AND VENUE

1.      This Court has exclusive jurisdiction over this matter pursuant to 28 U.S.C.

§ 1331 which provides that this Court has subject matter jurisdiction to hear a civil case or action

which arises under the laws of the United States, such that a federal question appears on the face

of the complaint.

2.      This Court has supplemental jurisdiction over Plaintiff's claims under New York

State law, pursuant to 28 U.S.C. § 1367, in that said state claims are inextricably intertwined with

the federal claims in this action.  Indeed, the state law claims are so related to the federal claims

in this action that they form part of the same case or controversy under Article III of the United

States Constitution.

3.     Venue is proper in the Eastern District of New York pursuant to 18 U.S.C. § 1965 (c) and 28 U.S.C. § 1391(b), because the claims arise in this District and a number of the Defendants reside in, transact business in, or maintain a principal place of business in this District.

## PARTIES

4.     Plaintiff, AJAY BAHL, is an individual residing within the State of New York. Defendant, New York College of Osteopathic Medicine of New York Institute of Technology ("NYCOM-NYIT" or "NYCOM"), is, and at all material times has been, a private Medical College in the County of Nassau, State of New York.  Its business address is Northern Boulevard, P.O. Box 8000, Old Westbury, New York 11568.

5.     Defendant, The National Board of Osteopathic Medical Examiners ("NBOME"), is an independent, not-for-profit organization with headquarters in Chicago, Illinois, incorporated under the laws of Indiana.  The NBOME is responsible for administering Levels 1, 2 and 3 of the "Comprehensive Osteopathic Medical Licensing Examination" ("COMLEX"), a series of national board examinations required for osteopathic physician licensure in the United States. NBOME maintains executive offices and a national center for clinical skills testing at 101 West Elm Street, Suites 230 and 150, Conshohocken, Pennsylvania 19428 (as well as Corporate Offices at 8765 W. Higgins Rd., Suite 200, Chicago, Illinois 60631-4174).

6.     Defendant, North Shore Long Island Jewish Plainview Hospital ("NS-LIJ") is, and at all material times has been, an acute care community hospital located at 888 Old Country Road, Plainview, New York 11803.

## FACTS

7.      Plaintiff's lifelong dream was and is to become a physician.

8.      Plaintiff attended New York University, graduating with a degree in psychology in 2007.  Subsequently, Plaintiff was accepted into a post-baccalaureate program in Special Science at the University of Pennsylvania.

9.      Plaintiff suffers from a constellation of diagnosed attention deficit disorders, executive function disability, speech and reading fluency disorders, expressive language dysphasia, and other anxiety-related disabilities, which substantially impair his ability to take certain examinations without appropriate accommodations to which he is legally entitled, and which constitute a "disability" under the Americans with Disabilities Act.

10.     Plaintiff applied to NYCOM-NYIT to become an osteopathic physician, and was accepted into its four-year program of studies leading to the degree of Doctor of Osteopathic Medicine.  He enrolled and commenced his studies in July 2008.

11.     During Plaintiff's first two years of study at NYCOM, he passed all his course work.  In point of fact, Plaintiff passed all of his course work and clinical rotations throughout his course of study, without fail.  In addition, throughout his four-year course of studies at NYCOM, Plaintiff also passed every quarterly standardized exam (largely multiple choice) administered in connection with his core clerkship requirements at NYCOM (i.e., every NBOME COMAT (Comprehensive Osteopathic Medical Achievement Test): each a 1 to 1 ½ hour long exams and largely multiple choice.

12.     In July 2010, upon Plaintiff's successful completion of his second year of studies at NYCOM, he was required to take his first Comprehensive Osteopathic Medical Licensing Examination, Level 1, known as the "COMLEX I" examination.  COMLEX I is the first of a

series (three total) of cognitive exams that NYCOM students are required to pass.  These exams

are prepared and administered by the National Board of Osteopathic Medical Examiners

("NBOME").  The COMLEX I exam addresses the basic mechanisms of health and disease

processes.  It is a full day, eight-hour examination consisting of 400 computerized, multiple

choice questions, given in two sections of four-hour blocks, each separated by a 40-minute break.

Plaintiff failed the examination on his initial attempt.  Pursuant to the 2010-11 edition of the

NYCOM student handbook, Plaintiff commenced a "COMLEX Level I Mandatory

Administrative Leave of Absence."

13.     Three months later, in October 2010, Plaintiff took the COMLEX I examination,

and passed.

14.     Having passed COMLEX I, Plaintiff was now officially qualified to work in a

hospital setting.  Plaintiff began his third year medical student clinical rotations.

## Coerced Medical Leave & Transcript Dispute

15.     Between October 2010 and June 2011, Plaintiff successfully completed all his

assigned third-year core clinical rotations.

16.     In June 2011, Plaintiff began a 10-week surgical rotation at the NS-LIJ Plainview

branch (the "Hospital").

17.     One morning during this rotation, as Plaintiff was preparing to observe a surgical

procedure, a NS-LIJ Operating Room ("OR") Scrub Technician told him that the sleeves of the

shirt he was wearing were too long to wear with scrubs.  She ordered him to change clothes.

Concerned about the time and the experience awaiting him in the OR, Plaintiff adjusted the

exposed 1" section of his sleeves so they were no longer exposed under the surgical scrubs.  He

showed this to the Scrub Technician.  He asked her to approve his sartorial adjustment.  The

Scrub Technician shrugged and replied, "I guess so," and they entered the OR together.

18.     A few days later, Dr. Rachlin told Plaintiff that the Scrub Technician had submitted a complaint to NS-LIJ's Department of Medical Education.  She claimed that Plaintiff had not "obeyed" her order to "tuck in your shirt" and not to enter the OR without "proper attire."

19.     Plaintiff was alarmed by the Scrub Technician's account of their conversation outside the OR.  Plaintiff considered it a privilege to be doing a clerkship at this hospital.  He denied this version of his conversation with the Scrub Technician.  Dr. Rachlin agreed to look into the matter further.

20.     About one week later, Plaintiff asked Dr. Rachlin if he had been able to speak with the Scrub Technician about her report.  Dr. Rachlin did not appear to have contacted her.

21.     Days later, Plaintiff asked Dr. Jeger if he knew whether the issue involving the Scrub Technician had yet been resolved, and what the status of her complaint was.  Dr. Jeger and NYCOM Dean Mary Ann Achtziger warned Plaintiff that if he asked Dr. Rachlin about this incident again, he would likely fail the surgical clerkship.[1]

22.     On or about June 29, 2011, about half-way through Plaintiff's NS-LIJ surgical rotation, Plaintiff was summoned to a meeting with Dr. Gary Rachlin, Director of Medical Education at NS-LIJ.

23.     Dr. Rachlin indicated he found Plaintiff to have undesirable speech patterns.  He criticized what he referred to as Plaintiff's "anxious" way of speaking.  Dr. Rachlin told Plaintiff that his speech was "incoherent."

---

[1] Between the filing of the proposed amended complaint and this amended complaint, Plaintiff's deposition was held and other discovery occurred, which revealed minor factual inaccuracies that required correction in this paragraph, as well as to paragraph 30.

24.     Dr. Rachlin told Plaintiff that he intended to share these criticisms with Dr. Abraham Jeger, Professor and Associate Dean of Clinical Education at NYCOM-NYIT.  Dr. Rachlin also said he planned to check Plaintiff's academic record for anything "glaring."  Upon information and belief, Dr. Jeger had illegally disclosed to Dr. Rachlin the contents of a written evaluation of Plaintiff prepared for his Psychiatry rotation, which made comments on Plaintiff's anxiety issues, a disclosure that violated HIPAA, FERPA and other statutory privacy protections.

25.     Two days later, on or about July 1, 2011, Plaintiff met with Dr. Rachlin, Dr. Jeger, and unnamed others at the Hospital.  Dr. Jeger told Plaintiff that he expected that Plaintiff would be "anxious" and "have problems" throughout this surgical rotation, were he to continue.  Both Dr. Rachlin and Dr. Jeger gave Plaintiff two options: Plaintiff could either agree to a "voluntary" medical leave of absence immediately, or he could fail the surgical clerkship.

26.     Plaintiff discussed this proposal with NYCOM's Assistant Clinical Dean, Dr. Leonard Goldstein, who told Plaintiff that he did not see a medical leave as necessary.

27.     Dr. Goldstein told Plaintiff he believed Dr. Jeger was determined to force Plaintiff to choose between these two options.  He urged Plaintiff to take the leave of absence ordered by Dr. Jeger, and take the two-part COMLEX II examination during this leave of absence.  In support of this scenario, Dr. Goldstein pointed out that there was no rule in the student handbook preventing students from taking any COMLEX examination when they were on a medical leave of absence.

28.     Plaintiff learned that Dr. Saha Panchal, the attending physician and preceptor on staff at NS-LIJ, who directly supervised Plaintiff in his surgical clerkship, praised his performance during this rotation and awarded him a passing evaluation.

29.     Plaintiff was aware that he was *passing* the NS-LIJ surgical rotation at the time he

was forced to cut short his surgical rotation, coerced by Dr. Jeger and Dr. Rachlin into taking a "voluntary" medical leave over Plaintiff's perceived and actual disabilities.

30.     Although routinely provided to other students, NS-LIJ refused to let Plaintiff examine his surgical rotation evaluation unless he first obtained permission from Dr. Goldstein, NYCOM explaining that this was due to the "unique nature" of Plaintiff's circumstances.

31.     Dr. Goldstein refused to include this evaluation in Plaintiff's academic file, despite school practice of including all evaluations.  Dr. Goldstein agreed to give Plaintiff a copy of the evaluation only after Plaintiff pointed out that he would need it to explain the medical leave of absence to the licensing agency.

32.     Plaintiff was deeply ashamed that he was being punished because of his medical disabilities, even though they did not affect his academic or clinical performance.

33.     Instead of receiving appropriate support, guidance and encouragement to manage Plaintiff's perceived and actual physical and neurological disabilities, Plaintiff was ridiculed, isolated, and threatened by the NYCOM and NS-LIJ administrators and faculty.  Their actions further exacerbated his anxiety-related disabilities.

34.     Under the circumstances, Plaintiff felt that he had no choice but to consent to the "voluntary" medical leave of absence, which was, in reality, mandatory.

35.     Dr. Jeger assured Plaintiff that if he agreed to the medical leave of absence, Plaintiff's transcript would legitimately reflect the fact that he had successfully completed -- and passed -- the six week surgical rotation.  Dr. Jeger explained that Plaintiff could finish the rest of this rotation later, without prejudice to his academic standing.  Nevertheless, Plaintiff eventually discovered later that he had received credit for only *five* weeks, rather than the *six* weeks to which he was entitled and which he was, in fact, promised by Dr. Jeger.

36.     Worse, Plaintiff's transcript falsely stated that Plaintiff had *withdrawn* from his surgical rotation and then it, implying that Plaintiff had performance or other issues.  Plaintiff had actually received partial credit, and ultimately received full credit after he had completed the course, following his coerced medical leave of absence.

37.     Plaintiff pointed out this transcript error to Assistant Dean Felicia Bruno, who agreed that the transcript was incorrect.  Nevertheless, his transcript was never corrected and this error is still displayed on Plaintiff's official academic record.

38.     Recalling that Dr. Goldstein had encouraged Plaintiff to take the COMLEX II exam during his mandatory medical leave of absence, Plaintiff registered for the COMLEX II CE exam.  However, shortly after Plaintiff completed his registration, he discovered suddenly that he had been *de*-registered by NYCOM.  Plaintiff asked Dr. Jeger the reason for this decision. Dr. Jeger replied, "If you took the [COMLEX II CE] exam [while on medical leave] and failed, you would blame it on being sick.  And if you passed, you would say you were healthy."

**Plaintiff's Disabilities: Yellin Center Study, September 23, 2011**

39.     During the summer and fall of 2011, Plaintiff sought additional treatment and insight into his disabilities.  Under the care of Dr. Leonard Adler, M.D. ("Dr. Adler"), Professor of Psychiatry and Director of the Adult ADHD Program at the NYU School of Medicine, and in conjunction with a comprehensive neuropsychological evaluation performed by Dr. Paul Yellin and Dr. Florence Myers, Ph.D., Plaintiff was diagnosed with the following conditions:

    a)  Attention Deficit Hyperactivity Disorder

    b)  Generalized Anxiety Disorder

    c)  DEF (Deficits in Executive Functioning)

    d)  Cluttering (fluency speaking and expressive language dysphasia disorders)

8

40.     These conditions slow down Plaintiff's written and verbal testing speed. However, they have no effect on his intellectual abilities or acumen, as reflected in Plaintiff's successful academic and clinical performance at NYCOM throughout his course of studies at NYCOM.

41.     The Yellin Center assessment, dated September 23, 2011 (the "Yellin report") (Exhibit A) concluded that "in our view, your struggles do constitute a disability significant enough to qualify for accommodations under the Americans with Disabilities Act," including an extension of time for all exams to at least two times the standard allotment to accommodate Plaintiff's disabilities, which substantially impair his reading fluency, and an advanced warning of at least five to 10 minutes before being called on in rounds (*id*. at p.16).

42.     The Yellin report noted that "it is clear that [Plaintiff] possesses a number of significant neurodevelopmental strengths that can help him successfully navigate through his medical school curriculum (*id*. at p.6).  His abilities include higher order cognition, reasoning, and logical thinking skills, solid problem solving skills uniquely tailored to clinical situations, and mental work stamina." (*Id*.)

**NYCOM-NYIT's Threats of Retaliation, Intimidation, and Coercion Related to Plaintiff's
Perceived and Actual Disabilities**

43.     During his medical leave, Plaintiff also met with NYCOM's School Psychiatrist, Dr. Sergei Belkin ("Dr. Belkin").  Dr. Belkin warned Plaintiff that if he brought up his anxiety-related issues to NYCOM-NYIT, he would be dismissed from the school.  Dr. Belkin repeated this warning to Plaintiff's treating psychiatrist, Dr. Adler.

44.     Dr. Belkin's warning left Plaintiff again feeling further isolated and ridiculed, aggravating even further his anxiety-related disabilities.

45.     After being forced out of his surgical rotation by the NYCOM and NS-LIJ faculty, Plaintiff was now threatened with expulsion if he discussed his disabilities with anyone at NYCOM.

46.     The combination of forced medical leave, deregistration from COMLEX, and the psychiatrist's warning that the school would dismiss Plaintiff upon news of any mental health issues were evidence to Plaintiff and his healthcare providers that he was being singled out and that he should take advantage of the first opportunity resume his classes.

47.     Plaintiff was allowed to return to his studies at NYCOM in September 2011, and had successfully completed his third- and fourth-year rotations by October 2012.

### COMLEX II Exams: Reasonable Accommodation, Hostile Educational Environment and Retaliatory Discrimination Issues

48.     Plaintiff completed all his course and clinical clerkship requirements for graduation from NYCOM.  However, to graduate, Plaintiff was required to take, and pass, two more examinations, COMLEX II CE and COMLEX II PE, which he had intended to take during his forced medical leave of absence.

49.      The COMLEX II CE exam consists of eight hours of testing, given in two sections of four-hour blocks each on a single day.  COMLEX II CE is a problem-based exam that assesses knowledge of clinical concepts and medical decision-making.

50.     The COMLEX II PE examination, on the other hand, is a clinical skills exam administered over seven hours.  For this exam, students perform live evaluations of multiple "patients" and write their comments out by hand.  The test is strictly timed.  Both COMLEX II CE and COMLEX II PE are scored on a "Pass/Fail" basis.

51.     Given his now well-documented difficulties with time-sensitive tasks like test

taking, Plaintiff asked NYCOM for permission to apply for appropriate and reasonable testing accommodations he needed for the two upcoming COMLEX II exams.  Unlike the difficult course-specific exams he had been taking through medical school and the relatively short COMAT exams (which are 1 to 1 ½ hours long), which Plaintiff passed successfully in every instance during his four years at NYCOM, the two COMLEX II exams are far more extensive – a full day of taxing, intense time-sensitive testing where accommodation of Plaintiff's anxiety, reading, and speech fluency disabilities was essential to his successful performance.

52.     Because of the Defendants' record of discrimination against Plaintiff for perceived and actual disabilities, and the retaliatory discrimination, intimidation, coercion and hostility to which Plaintiff had already been subjected, the symptoms of Plaintiff's disabilities grew considerably worse.  Plaintiff's reasonable accommodation requests regarding the COMLEX 2 exam administrations thus became even more urgent, and indispensable to his successful exam performance.

53.      However, when Plaintiff brought the subject up regarding his requests for reasonable accommodations, which the NYCOM Student Handbook states is NYCOM policy, NYCOM Assistant Dean Felicia Bruno told Plaintiff that he would be dismissed if he did not attempt both the COMLEX II exams before his stated graduation date of December 31, 2012.

54.     Dean Bruno told the Plaintiff that that rule appeared in the NYCOM student handbook, which was given to new students when they enrolled.

55.     Dean Bruno told the Plaintiff that three NYCOM students had actually been dismissed from NYCOM for not registering for COMLEX II on time.

56.     The NYCOM student handbook contained no requirement that a student take the COMLEX exams by their graduation date.  The 2011-12 edition of the NYCOM Student

Handbook at p. 31 states: "In order to graduate, all students must have passed COMLEX Level II (CE and PE)."  (Exhibit B)

57.     Dean Bruno was wrong.  Plaintiff's graduation would be delayed until after he passed the COMLEX II exams.

58.     Plaintiff was deeply troubled by NYCOM's failure and refusal to support what were by now his well-documented medical issues, in open defiance of stated school policy, choosing instead to threaten him with expulsion yet again.  Defendant's ongoing dismissive, hostile, and abusive conduct toward Plaintiff and the cumulative effects of that conduct on other disabled NYCOM students may not have been NYCOM's official policy, but it was NYCOM's official practice.  Realizing this, Plaintiff suffered further symptoms of anxiety.

59.     Plaintiff's consequential injuries were further exacerbated by his knowledge, upon information and belief, of inappropriate conduct of a personal and intimate nature by individual faculty at NYCOM, of which Defendant was or should have been aware, that sorely victimized individual NYCOM students.

60.     Another student in Plaintiff's class who developed cancer and was too ill to complete his rotation told Plaintiff that Dr. Goldstein had told him he would receive full credit for that incomplete rotation.

61.     Said conduct, it is alleged, contributed to a culture that enabled and fostered Defendant's insensitivity towards Plaintiff, and indifference to NYCOM students with special needs.

62.     Complying with Dean Bruno's false and misleading instructions, Plaintiff registered for the COMLEX II exams.  Plaintiff took both the COMLEX II PE and COMLEX II CE exams, under great duress, in December 2012, with no accommodation whatsoever.  He

failed both exams.

63.     In January 2013, Plaintiff began a mandatory six month COMLEX Leave of Absence.

64.     In April 2013, Plaintiff registered for the COMLEX II PE examination.

65.     Dr. Errichett, Director of The Institute of Clinical Competence, urged Plaintiff to take the COMPLEX II PE exam with all appropriate and necessary accommodations. Dr. Errichett told Plaintiff that even if an applicant did not have a record of receiving accommodations, the National Board of Osteopathic Medical Examiners ("NBOME") had a record of providing accommodations to applicants with diagnosed disabilities.

66.     However, because of pressure placed on him by NYCOM, Plaintiff took the COMLEX II PE examination without accommodations, and failed.

67.     In May 2013, Plaintiff applied for accommodations to NBOME for extended time to take the multiple choice COMLEX II CE exam because of his diagnosed and confirmed disabilities with respect to reading fluency and reading rate.

68.     With no support from NYCOM, and despite Dr. Yellin's professional opinion and written report, submitted to Dean Bruno, encouraging NYCOM to support Plaintiff's application to NBOME for an accommodation, NBOME denied Plaintiff's accommodation request approximately six weeks later.

69.     In June 2013, to accommodate Plaintiff's expressive language dysphasia, Plaintiff applied to NBOME for extended time for the COMLEX II PE exam in which to complete patient notes.  NBOME did not respond.

70.     Plaintiff followed up with NBOME, which responded that it did not address

Plaintiff's accommodation request because, it thought that Plaintiff's application was a duplicate request for COMLEX II CE accommodation, rather than a separate accommodation request for the COMLEX II PE.  NBOME claimed a "mix up" resulting in NBOME's failure to process Plaintiff's requested accommodations to complete the COMLEX II PE (NBOME's own guidelines provide that it has to process accommodations applications within eight weeks. NBOME failed to do so in Plaintiff's case).

71.    Plaintiff persisted in his efforts to obtain an accommodation from NBOME, which finally informed Plaintiff that it might consider processing his request by the impending September 5, 2013 test date, at the same time asking Plaintiff to submit additional information documenting his accommodation needs.

72.    Plaintiff complied with NBOME's request to submit additional documentation, but his submission was rejected by an NBOME official who informed him that it would take too long for the organization to consider the material, and that NBOME intended to use its notes from Plaintiff's original COMLEX 2 CE application for accommodation.

73.    Plaintiff, in turn, attempted to explain that his requests for each exam (COMLEX II CE, and COMLEX II PE) were qualitatively different, and based on distinctly different disabilities.  With respect to the written CE examination, Plaintiff requested extended time for the eight-hour test due to a slow reading rate, and with respect to the verbal (interview patients and write "SOAP" notes) PE examination, Plaintiff had requested extended time to accommodate his expressive language dysphasia ("cluttering").  Plaintiff's explanations notwithstanding, NBOME remained steadfast in its rejection of Plaintiff's accommodation requests for both the CE and PE COMLEX II exams.

74.    On or about August 30, 2013, Plaintiff's counsel submitted a letter to NYCOM-

NYIT's Office of Disability Services ("ODS"), requesting that Plaintiff be allowed to take a six-month medical leave of absence to allow him to take both the COMLEX II CE and COMLEX II PE exams by February 2014.  [The letter mistakenly requested a 2013 exam date, but its intention was manifestly clear.]  The letter was supported by medical evidence documenting Plaintiff's disabilities and their specific impact on Plaintiff's ability to take the specified tests in question. Specifically, Dr. Leonard A. Adler, Director of the Adult ADHD Program, and Professor of Psychiatry, NYU School of Medicine, who had been treating Plaintiff for his disabilities since March, 2011, provided an extensive and detailed report of Plaintiff's disabilities, and the accommodations that Plaintiff's disabilities necessitated. Dr. Adler's report, dated August 19, 2013, and annexed hereto as Exhibit C, accompanied Plaintiff's ODS submission of current reference.

75.     Immediately thereafter, Plaintiff met with Alyssa Aprovenzano, a representative at NYIT Office of Disability Services (ODS).  Ms. Aprovenzano, who had spoken with Plaintiff's learning specialist (Dr. Yellin), informed Plaintiff that he was most certainly a student with a disability deserving of, and entitled to, reasonable accommodations relative to the COMLEX II exams.  She noted that she was "shocked" by NYCOM's treatment of Plaintiff's issues, and that ODS would attempt to rectify the substantial damage that had already been done.  Specifically, ODS would try to get Plaintiff the requested accommodations for the COMLEX II exams scheduled for September 5, 2013, or, if not possible, for a later date.  If that could not be arranged, Ms. Aprovenzano assured Plaintiff that ODS would actively support Plaintiff's request for a medical leave of absence to take the COMLEX II exams at a later date, and secure the appropriate and necessary NBOME testing accommodations.

76.     Continually stymied by every effort to secure the requisite accommodations in

order to graduate and advance his career in medicine, Plaintiff was determined to try to secure reasonable accommodations required for him to succeed in the COMLEX II exams.  On September 19, 2013, Plaintiff contacted the dean of NYCOM, May Ann Achtiziger, regarding his August 30, 2013 application to the ODS for a leave of absence, to maintain his good standing at NYCOM.

77.     In an email dated, September 20, 2013, Dean Achtiziger denied Plaintiff's request for medical leave specifically stating that he was not eligible for medical leave because, he was on COMLEX leave, and that this particular point had been made to him numerous times.

78.     Dean Achtiziger further claimed that Plaintiff was not an active student when he requested the medical leave.  However, Plaintiff was enrolled in a class through the school and had paid tuition for that class at the time medical leave was formally requested.  Although Plaintiff made several informal requests for leave numerous times before, no interactive process with NYCOM-NYIT (i.e., a detailed conversation with Plaintiff and NYCOM-NYIT faculty and administration about Plaintiff's disabilities, needs, concerns, and accommodation requests) ensued.  The leave was requested so that Plaintiff could put himself in the best position to succeed on the COMLEX 2 exams, as well as have sufficient time to seek reasonable accommodations from NBOME.  NYCOM's denial was issued without considering Plaintiff's special circumstances, and disabilities, though Plaintiff's accommodation requests would not in any way fundamentally alter NYCOM's programs or activities, or the nature of its business.  It would not constitute "undue hardship" of any sort.

79.     In the absence of any resolution with either NBOME, with respect to his test accommodation request, or NYCOM, with respect to his request for a medical leave of absence, Plaintiff sought help from a civil rights attorney, William Goren, ("Mr. Goren") who commenced

a dialogue with NYCOM's Assistant General Counsel, Jordan Thompson III ("Mr. Thompson"). Mr. Goren asked Mr. Thompson to ensure that NYCOM not dismiss or de-register Plaintiff while he filed a complaint with the U.S. Department of Education's Office of Civil Rights ("OCR"), allowing the OCR time to investigate.

### Plaintiff's Internal Grievance Petition Asserting Disability Discrimination and Defendant's Responses

80.   On or about September 24, 2013, Plaintiff filed with NYCOM an internal grievance petition alleging that NYCOM's COMLEX leave policy prohibiting a student on COMLEX leave from simultaneously being on another form of leave (specifically, a medical leave) under any circumstance, and NYCOM's policy of strictly and without exception linking graduation with advance completion of the COMLEX II exams, violates the Americans with Disabilities Act of 1990, by discriminating on the basis of disability.  Simply put, NYCOM, as a place of public accommodation (i.e., a place of education) that is  subject to Title III of the ADA (42 U.S.C. Sec. 12181(7) (J)), "discriminates against a person with a disability when it fails to make reasonable modifications in policies, practices, or procedures, when those modifications are necessary to afford the goods, services, facilities, privileges, advantages, or accommodation to individuals with disabilities, unless the entity can demonstrate that the modifications fundamentally alters the nature of the goods, services, facilities, privileges, advantages, or accommodations." (42 U.S.C. Sec. 12182(b)(2)(A)(ii))

81.   Defendant's conduct herein also violates the disability discrimination provisions of Section 504 of the Rehabilitation Act of 1973, an Act to which Defendant is subject, as it is a recipient of federal financial assistance.  (29 U.S.C. Sec. 794(a))

82.     As a matter of law, NYCOM cannot simply rely on a stated policy in the face of Plaintiff's request for reasonable accommodations — in terms of both his request for medical leave while simultaneously on COMLEX leave, and to help facilitate COMLEX II test accommodations. It must, at the very least, endeavor to see whether the requested modifications are possible without undue hardship (*See PGA Tour Inc. v. Martin*, 532 U.S. 661,690-91(2001)). It is indisputable that Defendant NYCOM-NYIT did not meet that minimal investigatory standard.

83.     On October 21, 2013, in response to Plaintiff's internal grievance petition, NYCOM dismissed Plaintiff's disability discrimination concerns, and warned Plaintiff that if he did not receive the requested accommodations from NBOME and pass both the COMLEX II PE and COMLEX II CE exams by January 31, 2014, he would be dismissed from the school.

84.     In sum, every effort that Plaintiff has made to achieve nothing more than passage of his test requirements for graduation with reasonable accommodations in light of his disabilities has been met by Defendants' dismissiveness, hostility, and retaliation.

85.     Subsequently, in correspondence dated January 31, 2014, NYCOM's counsel suggested that NYCOM "might not" dismiss Plaintiff if it was provided with a copy of Plaintiff's OCR complaint which was filed (with OCR) on January 29, 2014.

86.     On January 31, 2014, Messrs. Goren and Thompson spoke regarding Plaintiff's status.  Mr. Goren informed Mr. Thompson that NBOME would require at least three months in advance of a COMLEX II testing date to consider (or reconsider) accommodation requests, and that scoring for the COMLEX II PE exam would take an additional 10 to 12 weeks.  That is, it was literally impossible for Plaintiff to have his accommodation request considered and decided by NBOME, take the exams, and secure the exam results, for at least 22 to 24 weeks beyond

NYCOM's imposed January 31, 2014 deadline.

87.     As a direct and proximate result of Defendants' conduct, as stated herein, Plaintiff suffered, and continues to suffer, substantial harm and damages, including, but not limited to severe emotional distress, mental anguish, pain and suffering, loss of tuition fees and expenses incurred, loss of the value of a medical degree and/or medical license, and lost earnings as a result of his loss of a medical degree and/or license.

~~COUNT ONE:~~
~~AGAINST DEFENDANT NYCOM-NYIT:~~
~~VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA")~~[2]

~~88.     Plaintiff repeats and realleges paragraphs 1 through 88 herein, as if each has been fully set forth at length.~~

~~89.     The Americans with Disabilities Act notes that individuals with disabilities encounter discrimination, which includes "exclusionary standards and criteria," and "relegation to lesser services, programs, (and) activities." 42 U.S.C. § 12101(a) (parenthesis added). The Act's purpose is to reflect "a clear and compelling national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b).~~

~~90.     The ADA, provides further that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182 (a).~~

~~91.     Upon information and belief, Defendant NYCOM-NYIT is subject to the~~

---

[2] For clarity and to comply with the Court's order, we have used "strikethrough" to show the specific claims we have removed from the proposed amended complaint. With respect to certain claims, we are unclear about whether the Court intended such claims to be removed and Plaintiff's counsel has contacted NYIT's counsel regarding the possibility of correcting the issue and will consult with all counsel in a good faith effort to reach agreement as to whether other changes should be made.

provisions of the ADA.  Defendant is a place of public accommodation — i.e., a place of education — that must therefore comply with the terms and provisions of Title III of the ADA. 42 U.S.C. § 12181(7) (J).

92.    Plaintiff has disabilities, recognized as such under the Statute.  That is, Plaintiff has physical or mental impairments, which substantially interfere with major life activities, among them, speaking, learning, reading, concentration, thinking, communicating, and working (42 U.S.C. § 12102(1)(A) and (2)), and, as such, is entitled to reasonable accommodations and equal opportunities in both an educational and employment context.


93.    At all material times, NYCOM-NYIT had notice of Plaintiff's disability, but denied Plaintiff the opportunity to participate in or benefit from its programs, and activities, and failed or refused to provide Plaintiff with reasonable accommodations.

94.    Reasonable accommodations could easily have been provided to Plaintiff by NYCOM-NYIT in a manner that would not have involved any undue burden or hardship, or fundamentally alter its program and activities in any way.

95.    Defendant NYCOM-NYIT "discriminates against a person with a disability when it fails to make reasonable modifications in policies, practices, or procedures, when those modifications are necessary to afford the goods, services, facilities, privileges, advantages, or accommodation to individuals with disabilities, unless the entity can demonstrate that the modifications fundamentally alters the nature of the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(2)(A)(ii)).

96.    NYCOM-NYIT is also guilty of discrimination under this statute when it dismisses from school the Plaintiff who was wrongfully denied a disability accommodation by a

~~third party administering an exam — the COMLEX II CE and PE exams administered by~~

~~NBOME — which Defendant requires as a condition precedent to graduation, thus condoning~~

~~that discrimination.~~

~~97.     Defendants' failure or refusal to provide Plaintiff with reasonable~~

~~accommodations, and fair access to its programs, and its condoning of the discrimination of third~~

~~parties (NBOME) by taking adverse action against Plaintiff based thereon, is discriminatory, thus~~

~~violating both the letter and spirit of the ADA.~~

~~98.     Wherefore Plaintiff suffered substantial damages as a direct and proximate result~~

~~of Defendants' conduct, and requests injunctive relief as set forth below.~~

**COUNT TWO:**
**AGAINST DEFENDANTS NYCOM-NYIT and NBOME:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA"),**
**<u>42 U.S.C. § 12182(b)(1)(A)(i): CONDONING THIRD PARTY DISCRIMINATION</u>**

99.     Plaintiff repeats and realleges paragraphs 1 through 99 herein, as if each has been

fully set forth at length.

100.     ADA, 42 U.S.C. § 12182(b)(1)(A)(i) provides that "[i]t shall be discriminatory to

subject an individual or class of individuals on the basis of a disability or disabilities of such

individual or class, directly, or through contractual, licensing, or other arrangements, to a denial

of the opportunity of the individual or class to participate in or benefit from the goods, services,

facilities, privileges, advantages, or accommodations of an entity."

101.     Upon information and belief, Defendant NYCOM-NYIT is a place of public

accommodation (i.e., place of education), and is thus subject to, and must comply with the above

provisions of the ADA, and, for that matter, all provisions of Title III of the ADA (42 U.S.C.

§ 12181(7)(J)).

102.     Plaintiff is an individual (as defined by the ADA) with a disability (or perceived

disability), which substantially interferes with major life activities: speaking, learning, reading, concentration, thinking, communicating, and working (42 U.S.C. § 12102(2)(A)), and, as such, is entitled to reasonable accommodations and equal opportunities in both an educational and employment context.

103.    Plaintiff petitioned NBOME for reasonable accommodations to take the COMLEX 2 exams.  NBOME wrongfully denied those requests.  NBOME has an independent obligation under the ADA to ensure that its exams are constructed and administered in such a way as to allow persons with disabilities to demonstrate their true ability and not their disabilities.  Defendant NYCOM-NYIT has its own obligation to ensure that it does not condone discrimination against persons with disabilities by taking adverse action, such as dismissal from school, against a student wrongfully denied a disability accommodation request by a third party (i.e., NBOME).

104.    At all material times, Defendant NYCOM-NYIT contracted with NBOME to administer the COMLEX II exam, and implemented adverse actions against Plaintiff in regard thereto.  Plaintiff was denied the opportunity to participate in or benefit from any reasonable accommodation with respect to said exam that Defendant NYCOM-NYIT should have provided, or that the party, NBOME, with which NYCOM-NYIT contracted or collaborated in regard to said exam, should have provided.

105.    Reasonable accommodations could easily have been provided to Plaintiff by both NYCOM-NYIT and NBOME in a manner that would not have involved any undue burden or hardship, or fundamentally alter its programs and activities.

106.    Defendants' failure or refusal to provide Plaintiff with reasonable accommodations, directly or contractually through other parties, violates both the letter and spirit

of the ADA.

107.    Wherefore Plaintiff suffered damages as a direct and proximate result of

Defendants' conduct, and requests injunctive relief as set forth below.

**COUNT THREE:**
**AGAINST DEFENDANTS NYCOM-NYIT, NS-LIJ, and NBOME:**
**AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA"), § 12203(a) and (b) AND/OR**
**REHABILITATION ACT OF 1973, § 504, 29 U.S.C. § 794: RETALIATION,**
**INTERFERENCE, COERCION OR INTIMIDATION**

108.    Plaintiff repeats and realleges paragraphs 1 through 108 herein, as if each has

been fully set forth at length.

109.    The ADA § 12203 provides:

> 1.  Retaliation
>
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

> 2.  Interference, coercion, or intimidation
>
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

110.    Section 504(a) of the Rehabilitation Act of 1973 (29 U.S.C. § 701, *et seq.*)

provides in pertinent part that:

> No otherwise qualified individual with a disability … shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

111.    Section 504(a) of the Rehabilitation Act of 1973 thus prohibits any program

receiving federal financial assistance from discriminating against a qualified individual with a disability solely by reason of, or on the basis of his disability.

112.    Upon information and belief, Defendants NYCOM-NYIT, NS-LIJ and NBOME are recipients of federal funds: i.e., financial assistance within the contemplation of the Statute, and are thus subject to the provisions of the Rehabilitation Act.

113.    Plaintiff is an individual with disabilities within the contemplation of the ADA and the Rehabilitation Act.

114.    Defendants NYCOM-NYIT, NS-LIJ and NBOME are subject to the ADA and the Rehabilitation Act.

115.    Upon information and belief, Defendant NYCOM-NYIT is a place of public accommodation (i.e., place of education), and is thus subject to, and must comply with the above provisions of the ADA, and, for that matter, all provisions of Title III of the ADA (42 U.S.C. § 12181(7)(J)).

116.    At all material times, NYCOM-NYIT, NS-LIJ and NBOME had notice of Plaintiff's disability.

117.    Pursuant to ADA § 12203(a) and (b) and § the Rehabilitation Act § 504 of Defendants retaliated against Plaintiff, and coerced, intimidated, threatened, or interfered with the Plaintiff because, Plaintiff requested accommodations, and was opposed to Defendants' unlawful acts and practices, because Plaintiff ultimately filed an internal grievance petition, because Plaintiff aided or encouraged other individuals victimized by Defendants' unlawful acts and practices in the exercise of any right protected by this statute, and because Plaintiff acknowledged an abiding concern for other NYCOM students victimized by Defendants' bad acts with respect to this statute and other laws.

118.     Specifically, Defendants NYCOM-NYIT, and NS-LIJ forced Plaintiff to take a medical leave of absence.

119.     Defendants NYCOM-NYIT and NS-LIJ entered a false record of Plaintiff's clinical surgical course in his academic transcript.

120.     Defendants NYCOM-NYIT and NBOME compelled Plaintiff to take the COMLEX II exam without reasonable accommodations.

121.     Defendants NYCOM-NYIT and NS-LIJ repeatedly doubted and mocked Plaintiff's disabilities, and threatened Plaintiff against pursuing accommodations at the risk of school expulsion and/or clerkship failure.

122.     Defendant NYCOM-NYIT threatened expulsion/school dismissal if Plaintiff did not take the COMLEX II exams by a certain date.

123.     Defendants NYCOM-NYIT and NBOME de-registered Plaintiff, thus preventing Plaintiff from taking the COMLEX II exam while on medical leave brought upon by NS-LIJ.

124.     Defendants NYCOM-NYIT, NS-LIJ and NBOME repeatedly refused to discuss, process, or facilitate Plaintiff's accommodation requests.

125.     Wherefore Plaintiff suffered substantial damages as a direct and proximate result of Defendants conduct, and requests compensatory damages and injunctive relief as set forth below.

**COUNT FOUR:**
**AGAINST DEFENDANTS NYCOM-NYIT, NS-LIJ, AND NBOME:**
**VIOLATION OF THE REHABILITATION ACT OF 1973,**
**SECTION 504(a)**

126.     Plaintiff repeats and realleges paragraphs 1 through 126 herein, as if each has been fully set forth at length.

127.     Section 504(a) of the Rehabilitation Act of 1973 (29 U.S.C. § 701, *et seq.*)

provides in pertinent part that:

> No otherwise qualified individual with a disability … shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

128.     Section 504(a) of the Rehabilitation Act of 1973 thus prohibits any program receiving federal financial assistance from discriminating against a qualified individual with a disability solely by reason of, or on the basis of his disability.

129.     Upon information and belief, Defendants NYCOM-NYIT, NS-LIJ, and NBOME are recipients of federal funds: i.e., financial assistance within the contemplation of the Statute, and are thus subject to the provisions of the Rehabilitation Act.

130.     Plaintiff is a qualified individual as defined by the Rehabilitation Act, with disabilities recognized thereunder, and, as such, is entitled to reasonable accommodations, program accessibility, and equal opportunities in both an educational and employment context.

131.     Plaintiff is a qualified individual as defined by the Rehabilitation Act.  That is, with or without reasonable accommodation, Plaintiff has the ability to perform the essential functions, program, and activities of a medical student and physician, the very functions, program, and activities administered by Defendants.

132.     At all material times, Defendants NYCOM-NYIT, NS-LIJ and NBOME had notice of Plaintiff's disability, but denied Plaintiff the opportunity to participate in or benefit from its programs, and activities, and failed or refused to provide Plaintiff with reasonable accommodations.

133.     Defendants NYCOM-NYIT, NS-LIJ and NBOME easily could have provided reasonable accommodations and fair access to its programs to Plaintiff without requiring significant difficulty or expense, or undue hardship.

134.    Defendants NYCOM-NYIT's, NS-LIJ's and NBOME's failure or refusal to provide Plaintiff with reasonable accommodations, and fair access to its programs is discriminatory, thus violating both the letter and spirit of the Rehabilitation Act.

135.    Wherefore Plaintiff suffered substantial damages as a direct and proximate result of Defendants' conduct, and requests compensatory damages and injunctive relief as set forth below.

**COUNT FIVE:**
**AGAINST DEFENDANT NYCOM-NYIT, ~~NS-LIJ~~, and NBOME:**
**VIOLATION OF THE REHABILITATION ACT of 1973 IMPLEMENTING**
**REGULATIONS**

136.    Plaintiff repeats and realleges paragraphs 1 through 136 herein, as if each has been fully set forth at length.

137.    The regulations of The Rehabilitation Act of 1973, specifically, 45 C.F.R. § 84.4(b)(v),defines discriminatory actions that are prohibited as those that:

> Aid or perpetuate discrimination against a qualified handicapped person by providing significant assistance to an agency, organization, or person that discriminates on the basis of handicap in providing any aid, benefit, or service to beneficiaries of the recipients program or activity."

138.    Defendants NYCOM-NYIT, ~~NS-LIJ,~~ and NBOME aided or perpetuated discrimination against Plaintiff, a qualified handicapped person within the contemplation of the statute, and provided significant assistance (Defendant NBOME aided NYCOM-NYIT, NYCOM-NYIT aided NBOME~~, and NS-LIJ aided NYCOM-NYIT~~) which did in fact discriminate against Plaintiff on the basis of handicap (i.e., disability).

139.    Wherefore Plaintiff suffered substantial damages as a direct and proximate result of Defendant's conduct, and requests compensatory damages and injunctive relief as set forth

below.

## COUNT SIX:
## AGAINST DEFENDANT NYCOM-NYIT:
## HOSTILE EDUCATIONAL ENVIRONMENT

140.    Plaintiff repeats and reiterates paragraphs 1 through 141 as if fully set forth herein.

141.    Following a successful academic career at New York University and the University of Pennsylvania, Plaintiff applied for and was granted admission to NYCOM-NYIT.

142.    Like any other enrolled student, Plaintiff had a right to expect that NYCOM.-NYIT would honor its obligation to provide him with a quality medical education, provide him with a supportive and collegial learning environment, make appropriate and reasonable allowances and accommodations for any disability and do nothing to interfere with Plaintiff's legitimate pursuit of his educational aspirations.

143.    On the contrary, Defendant NYCOM-NYIT engaged in an ongoing pattern of harassing, abusive, coercive, and threatening behavior towards Plaintiff.  Defendant's conduct materially impacted Plaintiff's educational experience, exacerbated his learning issues and anxiety disorders, destroyed his confidence, and rendered his passage of the COMLEX exams virtually impossible.  That harassment had the effect of denying to Plaintiff any of NYCOM-NYIT's accommodations, advantages, facilities, or privileges to which Plaintiff was rightfully entitled.

144.    Defendant NYCOM-NYITT, by its ongoing behavior, significantly damaged Plaintiff and many others known to plaintiff, by creating a hostile educational environment that was pervasive.  Defendant knew or should have known of the harassment and hostile educational environment, failed or refused to take action reasonably calculated to end the same, and failed or

Case 1:17-cv-01109-DML-TWP  Document 77  Filed 08/17/15  Page 29 of 48 PageID #: 901

refused to implement effective preventive and remedial means to curb said tortious conduct.

145.    Wherefore Plaintiff requests relief as set forth below.

**COUNT SEVEN:**
**AGAINST DEFENDANT NORTH SHORE LONG ISLAND**
**JEWISH PLAINVIEW HOSPITAL ("NS-LIJ"):**
**VIOLATION OF THE**
**AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA")**

146.    Plaintiff repeats and realleges paragraphs 1 through 146 herein, as if each has been fully set forth at length.

147.    Defendant NS-LIJ is a covered Defendant within the meaning of the ADA statute, and is thus subject to its provisions.  Defendant's discrimination based on Plaintiff's perceived disabilities is therefore actionable under the statute.

148.    Title III of the ADA, specifically, 42 U.S.C. § 12182 (a), provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

149.    At all material times, Plaintiff either suffered from, or was perceived and regarded by NS-LIJ as suffering from disabilities within the meaning of the ADA.

150.    Plaintiff has disabilities, recognized as such under the Statute.  That is, Plaintiff has physical or mental impairments, which substantially interfere with major life activities, among them, speaking, learning, reading, concentration, thinking, communicating, and working (42 U.S.C. § 12102 (1)(A) and (2)), and, as such, is entitled to reasonable accommodations and

equal opportunities in both an educational and employment context.

151.    On or about May 2011, Plaintiff began working at NS-LIJ as a NYCOM medical student performing his surgical clerkship.

152.    At all material times, NS-LIJ collaborated and worked in tandem with NYCOM-NYIT.  NS-LIJ routinely hired and trained medical students from NYCOM-NYIT for various medical student clerkships.

153.    Upon information and belief, when Plaintiff began his surgical clerkship at NS-LIJ, some and/or a substantial part of the tuition that he paid to NYCOM-NYIT was forwarded directly to NS-LIJ for Plaintiff's training.

154.    On account of Defendant NS-LIJ's staff and employee perception of Plaintiff's disabilities, Plaintiff suffered an adverse action by NS-LIJ.  On or about July 1, 2011, NS-LIJ physicians demanded that Plaintiff take a "voluntary" medical leave, because of their perception of Plaintiff's anxiety disability, and told Plaintiff that NS-LIJ would fail Plaintiff in his surgical rotation if he did not accede to this demand.  Plaintiff received a strongly positive review and passing grade evaluation from the NS-LIJ primary attending physician to whom he was assigned in said clinical rotation.

155.    If NS-LIJ had failed Plaintiff for his surgical rotation, it would have negatively impacted his educational record, and his ability to obtain desired and gainful employment in the medical profession.  As such, to his considerable detriment, Plaintiff was compelled to take a "voluntary" medical leave from NYCOM-NYIT on or about July 5, 2011.

156.    At all material times, Defendant NS-LIJ had notice of Plaintiff's disability, but denied Plaintiff the equal opportunity to participate in or benefit from its programs, and activities, and failed or refused to provide Plaintiff with reasonable accommodations.

~~157.    NS-LIJ could easily have provided equal opportunity and reasonable accommodations to Plaintiff in a manner that would not have involved any undue burden or financial hardship, or fundamentally alter its program and activities in any way.~~

~~158.    Wherefore Plaintiff suffered substantial damages as a direct and proximate result of Defendant's conduct, and requests compensatory damages and injunctive relief as set forth below.~~

## COUNT EIGHT:
## AGAINST DEFENDANT NBOME:
## VIOLATION OF THE AMERICANS WITH
## DISABILITIES ACT OF 1990 ("ADA")

159.    Plaintiff repeats and realleges paragraphs 1 through 159 herein, as if each has been fully set forth at length.

160.    Title III of the ADA, 42 U.S.C. § 12189, provides that:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

161.    Defendant NBOME is a covered entity that offers courses related to licensing and credentialing for post-secondary education, and for professional purposes.  It is thus subject to the ADA provisions at bar.

162.    Plaintiff is a person with disabilities within the contemplation of this statute (ADA).

163.    Defendant NBOME was obliged by statute to offer said examinations in a "manner accessible" to the Plaintiff as a person with disabilities (42 U.S.C. § 12189), but failed

or refused to do so.

164.    Plaintiff suffered substantial consequential damages as a direct and proximate result of Defendant NBOME's ADA violations in this regard.

165.    Wherefore Plaintiff requests injunctive relief as set forth below.


**COUNT NINE:**
**AGAINST DEFENDANTS NYCOM-NYIT AND NBOME:**
**VIOLATION OF 28 CFR § 36.309(B) (1)(I)**

166.    Plaintiff repeats and realleges paragraphs 1 through 166 herein, as if each has been fully set forth at length.

167.    28 CFR § 36.309(b)(1)(i) provides as follows:

> Any private entity offering an examination covered by this section must assure that— (i) The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure).

168.    Plaintiff is 'an individual with a disability that impairs sensory, manual, or speaking skills' within the contemplation of the statute.

169.    Defendants NYCOM-NYIT and NBOME are private entities that offer examinations related to "licensing" or "certification or credentialing for secondary or postsecondary education, professional or trade purposes" (28 CFR § 36.309 (a)) within the meaning of the statute.

170.    Defendants NYCOM-NYIT and NBOME acting jointly, and co-dependently in the selection and administration of the COMLEX II PE and CE exams did not in fact "select and

administer" said exams cooperatively " to best ensure that, when the examination is administered

to an individual with a disability that impairs sensory, manual, or speaking skills, the

examination results accurately reflect the individual's aptitude or achievement level" rather than

reflect "the individual's impaired sensory, manual, or speaking skills"( 28 CFR § 36.309

(b)(1)(i)).

171.   Said Defendants violated the referenced statute on its express terms.

172.   Plaintiff was injured thereby.

173.   Wherefore Plaintiff suffered substantial damages as a direct and proximate result

of Defendants' conduct, and requests relief as set forth below.

**COUNT TEN:**
**AGAINST DEFENDANTS NYCOM-NYIT AND NBOME: DEPRIVATION OF**
**PLAINTIFF'S RIGHTS UNDER COLOR OF LAW**

174.   Plaintiff repeats and realleges paragraphs 1 through 174 herein, as if each has

been fully set forth at length.

175.   42 U.S. Code § 1983, a part of the Civil Rights Act of 1871, provides a civil

action for deprivation of rights.  It states:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress.

176.   Plaintiff is a citizen of the United States, and is a person within the jurisdiction of

this statute.

177.   Defendants NYCOM-NYIT and NBOME are covered 'persons' who, under color

of state law, subjected Plaintiff to the deprivation of his rights to protection under the law for reason of his perceived and actual disabilities.

178.    Defendants were clothed with the authority of state law in their collaborative and collective efforts to administer said COMLEX II PE and CE examinations.

179.    The state law of reference is Title 8, Article 131, Sections 6523, and 6524, of the New York State Education Law administered by the New York State Department of Education.

180.    The licensure requirements herein, including, but not limited to, the COMLEX II exam administrations, are promulgated by the New York State Board of Osteopathic Medicine, a body appointed by the New York State Board of Regents, under the aegis of the Commissioner of the New York State Department of Education.

181.    The COMLEX II exams are therefore state law requirements, and those who administer them are clothed with the authority of state law.

182.    Defendants violated Plaintiff's civil rights within the contemplation of this statute by unlawfully depriving him of his rights under the laws of the United States to equal treatment, and protection, and non-discrimination, and non-retaliation for reason of his perceived and actual disabilities, and did so while clothed with the authority of New York State law.

183.    Plaintiff suffered damages directly and proximately caused by Defendants' wrongdoing.

184.    42 U.S.C. § 1988(b) provides for attorneys' fees to the prevailing party at the discretion of the court.

185.    Wherefore Plaintiff requests relief as set forth below, including, but not limited to attorneys' fees.

**COUNT ELEVEN:**

34

**AGAINST DEFENDANT NBOME:**
**NEGLIGENCE**

186. Plaintiff repeats and realleges paragraphs 1 through 186 herein, as if each has been fully set forth at length.

187. Defendant NBOME misconstrued, mischaracterized, and mishandled Plaintiff's requests for separate and distinctly different accommodations with respect to the COMLEX II CE and COMLEX II PE examinations, and failed, therefore, to properly exercise its duty of due care in regard thereto.

188. The mishandling of Plaintiff's requests by Defendant NBOME constituted negligence.

189. As a direct, proximate result of Defendant NBOME's negligence, Plaintiff sustained and suffered substantial damages.

190. Wherefore Plaintiff requests relief as set forth below.

**COUNT TWELVE:**
**AGAINST DEFENDANT NYCOM-NYIT:**
**UNJUST ENRICHMENT**

191. Plaintiff hereby repeats and realleges paragraphs 1 through 191 herein, as if each has been fully set forth at length.

192. During his studies at NYCOM-NYIT, Plaintiff provided NYCOM-NYIT with substantial sums for tuition and school-related expenses in consideration for and in expectation of the provision of a course of studies leading to matriculation and a degree as Doctor of Osteopathic Medicine.

193. Defendant NYCOM-NYIT contributed to, and helped create a hostile educational environment, and was in violation of anti-discrimination laws, respecting the Plaintiff, an

individual with qualified disabilities.  Further, Defendant did not provide Plaintiff with the reasonable accommodations required under the law that he desperately needed, effectively depriving him of the opportunity to complete the COMLEX II exams, and receive his degree of Doctor of Osteopathic Medicine.

194.    Defendant NYCOM-NYIT was allowed to profit at Plaintiff's expense, as it unfairly and unjustly received from the Plaintiff substantial sums in tuition, related fees, and other benefits without making any restitution to plaintiff.  As a result of NYCOM's unjust acts of enrichment, Plaintiff has suffered, and continues to suffer, losses and damages in a sum to be proved at trial.

195.    It would be against equity and good conscience to permit Defendant NYCOM-NYIT to retain, and be unjustly enriched by any of the tuition fees, and other benefits that it received from Plaintiff during the course of Plaintiff's studies at NYCOM-NYIT.  Wherefore Plaintiff requests relief as set forth below.

**COUNT THIRTEEN:**
**AGAINST DEFENDANT NYCOM-NYIT:**
<u>**BREACH OF CONTRACT**</u>

196.    Plaintiff hereby repeats and realleges paragraphs 1 through 196 herein, as if each has been fully set forth at length.

197.    The Plaintiff was enrolled at NYCOM.  He was a student in good standing.  His tuition was paid.  There is no question that he complied with all the terms of the Student Code of Conduct.

198.    There was an "implied contract" between NYCOM and its enrolled students, in that if Plaintiff were to perform his required duties and comply with his educational responsibilities, NYCOM-NYIT would confer upon him a medical degree.

199.    NYCOM-NYIT, and its agents and employees, at all times, knew that the Plaintiff was enrolled at NYCOM.

200.    NYCOM-NYIT intentionally interfered with the Plaintiff's implied contract pursuant to its aforesaid conduct.

201.    NYCOM-NYIT, and its agents and employees, intentionally and without good cause or justification breached its contractual promises to Plaintiff, in violation of its procedures, as specified in the NYCOM Student Handbook to which Plaintiff, at all times, complied.

202.    The actions of Defendant, NYCOM-NYIT evidenced a callous, intentionally malicious, reckless, wanton and deliberate indifference to Plaintiff's contractual right to his enrollment at NYCOM-NYIT, his graduation, and his pursuance of a license to practice medicine.  Defendant breached its contract with Plaintiff, proximately causing Plaintiff to sustain substantial damages.  Wherefore Plaintiff requests relief as set forth below.

### COUNT FOURTEEN:
### DEFENDANT NYCOM-NYIT:
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

203.    Plaintiff repeats and realleges paragraphs 1 through 203 herein, as if each has been fully set forth at length.

204.    Defendant NYCOM-NYIT knew or reasonably should have known that its repeated dismissiveness of Plaintiff's request for accommodation, it's deliberate indifference regarding his disability, and its failure to provide reasonable accommodation based on that disability would and did proximately result in physical and emotional distress to Plaintiff.

205.    Defendant NYCOM-NYIT breached the duty it owed to Plaintiff to provide an environment free from unfair treatment, discrimination and retaliation.  At all relevant times, Defendant NYCOM-NYIT had the power, ability, authority, and duty to stop engaging in the

conduct described above and/or to intervene to prevent or prohibit said conduct.

206.     Despite its knowledge, power and duty, Defendant NYCOM-NYIT negligently failed to act to stop engaging in the conduct described herein, and/or to prevent or prohibit such conduct, or otherwise protect Plaintiff.  To the extent that such negligent conduct was perpetrated by its faculty and administration, Defendant NYCOM-NYIT ratified said conduct with the knowledge that Plaintiff's emotional and physical distress would thereby increase, and with wanton and reckless disregard for the consequences to Plaintiff.

207.     As a direct and proximate cause and result of Defendant NYCOM-NYIT conduct, Plaintiff has suffered and continues to suffer serious emotional distress, humiliation, anguish, emotional and physical injuries, as well as economic losses.

208.     Wherefore Plaintiff requests relief as set forth below.

**COUNT FIFTEEN:**
**AGAINST DEFENDANT NYCOM-NYIT:**
**NEGLIGENT MISREPRESENTATION**

209.     Plaintiff repeats and realleges paragraphs 1 through 209 herein, as if each has been fully set forth at length.

210.     In the course of its business, NYCOM-NYIT, through its Office of Disability Services ("ODS"), its agents and faculty, made misrepresentations and omissions of material facts to Plaintiff with knowledge that such statements were false, and with the intention that Plaintiff rely on these statements pertaining to Plaintiff's requested COMLEX II exam accommodations.

211.     These misrepresentations related to ODS's authority to resolve Plaintiff's past, current and future accommodation requests, and other disability- related issues.  Defendant NYCOM-NYIT, through ODS, failed to take reasonable care in obtaining and communicating to

Plaintiff material information about its actual authority to resolve disability-related, and disability accommodation issues.

212.    Plaintiff reasonably and detrimentally relied on Defendant NYCOM-NYIT's misrepresentations and omissions, and did not pursue other means of addressing his disability and accommodation issues.

213.    Defendant NYCOM-NYIT's negligent misrepresentations and omissions caused, and, unless enjoined, will continue to cause irreparable injury to Plaintiff for which there is no adequate remedy at law.

214.    Plaintiff's injury is a direct consequence and was proximately caused by Defendant NYCOM-NYIT's false assertions and representations.

215.    Wherefore Plaintiff requests relief as set forth below.

**COUNT SIXTEEN:**
**DECEPTIVE PRACTICES IN VIOLATION**
**OF NEW YORK**
**GENERAL BUSINESS LAW § 349**
**<u>(DECEPTIVE ACTS AND PRACTICES)</u>**

216.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 216 herein, as if each said allegation has been set forth at length.

217.    New York General Business Law ("GBL") § 349 prohibits deceptive and misleading business practices and its scope is broad.

218.    GBL § 349 on its face applies to virtually all economic activity.

219.    GBL § 349 applies to educational services and/or goods provided to educational consumers by private medical schools like NYCOM-NYIT.

220.    GBL § 349 thus encompasses a significantly wider range of deceptive business practices that were never previously condemned by decisional law.  Indeed, GBL § 349 was

intended to be broadly applicable, extending far beyond the reach of common law fraud.

221.     At all material times, the Plaintiff was a consumer of educational services.

222.     At all material times, NYCOM-NYIT engaged in a broad-based marketing scheme, which was designed to induce students to enroll in, and complete their medical school studies at NYCOM-NYIT.

223.     At all material times, as stated above and otherwise, from June 29, 2011 to the present, NYCOM-NYIT made material misrepresentations to Plaintiff in various press releases, press statements, brochures, newspaper advertisements, magazine advertisements, and correspondence, and the Student Handbook, which stated or suggested, expressly or implicitly, that he would earn his medical degree and obtain a medical license if he were to comply with his obligations as a medical student and pass all his medical board examinations, and that NYCOM-NYIT would use its best efforts to help Plaintiff pass his medical board examinations.

224.     At all material times, NYCOM-NYIT knew that the above representations were false in that it had no intention of providing Plaintiff with reasonable assistance in passing his medical board examinations, and permitting him to earn a medical degree and medical license, and did not provide such assistance, even though Plaintiff complied with all of his obligations as a medical student.

225.     Each of the aforesaid misrepresentations was likely to mislead and deceive a reasonable consumer acting reasonably under the circumstances.

226.     In determining what types of conduct may be deceptive practices under New York law, New York courts should apply an objective standard, which asks whether the representation or omission was likely to mislead a reasonable consumer acting reasonably under the circumstances, taking into account not only the impact on the average consumer, but also on the

vast multitude, which the statutes were enacted to safeguard—including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions.

227.    Here, NYCOM-NYIT, and their agents and employees, took great pains, at great expense, to make sure that appearances and general impressions, buttressed by a bombardment of positive representations, would lead a reasonably educated consumer into thinking that NYCOM-NYIT would use its best efforts to help Plaintiff pass his medical board examinations and earn a medical degree.

228.    Most savvy educational consumers, not just the ignorant, unthinking, and credulous, would never have imagined that NYCOM-NYIT, despite its glowing and positive appearances and general impressions, would have permitted one of their students to endure an educational experience that was characterized by a callous disregard of, and failure to accommodate, Plaintiff's well-documented medical disabilities.

229.    NYCOM-NYIT thus engaged in "deceitful conduct" in violation of GBL § 349. Moreover, as a result of NYCOM-NYIT's violation of GBL § 349, Plaintiff is entitled to receive treble damages for his compensatory damages (such as reimbursement of tuition and other educational costs and expenses), to the extent and in the amount applicable, as well as reasonable attorneys' fees, pursuant to GBL § 349 (h), and/or other authority.

230.    Wherefore Plaintiff requests relief as delineated above, and as set forth below.

~~**COUNT SEVENTEEN:**~~
~~**AGAINST DEFENDANT NYCOM-NYIT:**~~
~~**TORTIOUS INTERFERENCE WITH CONTRACT**~~

~~231.    Plaintiff repeats and realleges paragraphs 1 through 231 herein, as if each has been fully set forth at length.~~

~~232.    At all material times, Defendant, NYCOM, was aware of the existence of a valid contract between Plaintiff and a third party, NBOME.~~

~~233.    At all material times, Defendant, NYCOM, had knowledge of that contract.~~

~~234.    Defendant, NYCOM, by its aforesaid conduct, intentionally procured NBOME's breach of the contract (labeled the Bulletin of Information) without cause or justification, and through wrongful means.~~

~~235.    Defendant NBOME, by failing to adhere to its contractual obligations, and failing to give Plaintiff the reasonable testing accommodations, to which he was entitled, breached the aforesaid contract between NBOME and Plaintiff.~~

~~236.    As a direct and proximate result of NYCOM's intentional procurement of NBOME's breach of contract with Plaintiff, Plaintiff suffered, and continues to suffer, damages.~~

### COUNT EIGHTEEN: AGAINST DEFENDANT NBOME:
### TORTIOUS INTERFERENCE WITH CONTRACT

237.    Plaintiff repeats and realleges paragraphs 1 through 236 herein, as if each has been fully set forth at length.

238.    At all material times, Defendant, NBOME, was aware of the existence of a valid contract between Plaintiff and a third party, NYCOM, whereby Plaintiff agreed to pay NYCOM various tuition and fees in consideration of a full and fair opportunity to obtain a medical degree (such contract included a covenant of good faith and fair dealing running from NYCOM to Plaintiff).

239.    At all material times, Defendant NBOME, had knowledge of that contract.

240.    Defendant, NBOME, by its aforesaid conduct, intentionally procured NYCOM's breach of the aforesaid contract without cause or justification, and through wrongful and illegitimate means.

42

241.     Defendant NYCOM, by failing to adhere to its contractual obligations, and failing to give Plaintiff the reasonable testing accommodations, to which he was entitled, and failing to permit Plaintiff to obtain a medical degree, breached the aforesaid contract between NYCOM and Plaintiff.

242.     As a direct and proximate result of NBOME's intentional procurement of NYCOM's breach of contract with Plaintiff, Plaintiff suffered, and continues to suffer, damages.

**COUNT NINETEEN:**
**AGAINST DEFENDANTS**
**NYCOM-NYIT, NBOME, AND NS-LIJ:**
**VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW,**
**NEW YORK EXECUTIVE LAW § 291, *ET. SEQ.***

243.     Plaintiff repeats and realleges paragraphs 1 through 243 herein, as if each has been fully set forth at length.

244.     New York Executive Law § 296 provides that:

> a)     It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited.
> b)     Nothing in this subdivision shall be construed to prevent the barring of any person, because of the sex of such person, from places of public accommodation, resort or amusement if the

division grants an exemption based on bona fide consideration of public policy; nor shall this subdivision apply to the rental of rooms in a housing accommodation which restricts such rental to individuals of one sex.

c)      For the purposes of paragraph (a) of this subdivision, "discriminatory practice" includes:

i)      a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations.

ii)      a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden;

iii)      a refusal to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable.

245.    Under New York Executive Law §§ 291 & 292(21) the term "disability" is broadly defined to mean "a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions which prevents the exercise of a normal bodily function or is demonstrated by medically accepted clinical or laboratory diagnostic techniques."

246.    Thus, an individual can be disabled under the New York State Human Rights Law, New York Executive Law §§ 291 *et seq.* merely if his impairment is demonstrable by medically accepted techniques; it is not required that the impairment substantially limit that individual's normal activities.

247.    Plaintiff, for the above-stated reasons, clearly has a "disability" as defined in the

New York Executive Law.

248.     New York Executive Law § 296(3)(a) provides that: "It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program.

249.     At all material times, Plaintiff had, and still has, a "disability" as defined by the New York Executive Law ("NYSHRL").

250.     At all material times, Defendants, NYCOM and NS-LIJ, for the above-stated reasons, were covered entities and/or "employers" as set forth in the New York Executive Law.

251.     At all material times, Defendants NYCOM and NS-LIJ had notice of Plaintiff's disability.

252.     At all material times, with reasonable accommodations, Plaintiff could have performed the essential functions of his job and/or role as a medical student (performing the same work and duties as a first-year intern) at NS-LIJ.

253.     At all material times, for the aforesaid reasons, Defendants NYCOM-NYIT, NBOME, and NS-LIJ failed and refused to make reasonable modifications in policies, practices, or procedures, which were necessary to accommodate Plaintiff's known and documented disability, in a manner which would not have fundamentally altered the nature of each of Defendant's programs, facilities, privileges, and/or advantages.

254.     Wherefore Plaintiff suffered substantial damages as a direct and proximate result of Defendant's conduct, and requests compensatory damages and injunctive relief as set forth

below.

## COUNT TWENTY:
## AGAISNT DEFENDANTS NYCOM-NYIT, NBOME and NJ-LIJ:
## VIOLATION OF NHCHRL, NYC ADMIN. CODE § 8-107(15)(A)

255.    Plaintiff repeats and realleges paragraphs 1 through 255 herein, as if each has

been fully set forth at length.

256.    New York City Admin. Code, § 8-107(15)(A), provides in pertinent part that "any

person prohibited by the provision of this section from discriminating on the basis of disability

shall make reasonable accommodation to enable a person with a disability to satisfy the essential

requisites of a job or enjoy the rights in question provided that disability is known or should have

been known by the covered entity.

257.    At all material times, Plaintiff had, and still has, a "disability" as defined by the

New York Executive Law ("NYCHRL").

258.    At all material times, Defendants, NYCOM and NS-LIJ, were covered entities

and/or "employers" as set forth in the NYCHRL.

259.    At all material times, Defendants' discriminatory and wrongful conduct occurred

in New York City, or had an impact in New York City, because: (i) various communications took

place between Plaintiff, his then attorney, William Goren, Esq., and/or learning specialist, and

Dr. Paul Yellin (who at all material times maintained an office in New York City) with NYCOM-

NYIT's agents or employees, Alyssa Aprovenzano (who spent substantial time working from

NYIT's  New York City campus), Michael Schneider (who worked exclusively from NYIT's

New York City campus), and Catherin Flickinger (who spent substantial time working from

NYIT's  New York City campus).  Many of these communications, which involved Defendants'

discrimination against Plaintiff and Defendants' refusal to provide Plaintiff with reasonable

accommodations in view of his disability, took place in New York City; (ii) upon information and belief, various communications took place between and amongst NYCOM-NYIT officials, administrators,  faculty members, agents, and employees, NBOME administrators, officials, agents and employees, and NS-LIJ administrators, officials, agents, and employees.  Many of these communications, upon information and belief, involved Plaintiff and the extent to which Defendants were willing or not willing to accommodate Plaintiff in view of his disability and/or the appropriate place and/or manner of his medical internships; (iii) Plaintiff was compelled to conduct his surgical clerkship at NS-LIJ's Forest Hills (in Queens, New York) after NS-LIJ's misconduct towards him (as alleged herein).  Had Defendant NS-LIJ not discriminated against Plaintiff, he would have completed the clerkship in Nassau County, rather than in New York City.

260.    At all material times, Defendants NYCOM and NS-LIJ had notice of Plaintiff's disability.

261.    At all material times, with reasonable accommodations, Plaintiff could have performed the essential functions of his job and/or role as a medical student (performing the same work and duties as a first-year intern) at NS-LIJ.

262.    At all material times, Defendants, NYCOM and NJ-LIJ, failed and refused to make reasonable accommodations for Plaintiff's needs.

263.    As a direct and proximate result of Defendants' misconduct, Plaintiff suffered, and continues to suffer, damages.

264.    As a direct and proximate result of Defendants' violations of New York Executive Law § 296, Plaintiff suffered, and continues to suffer, substantial harm and damages.

265.    The aforesaid acts of Defendants NYCOM were willful, wanton, and malicious, and demonstrate a reckless disregard or indifference to its civil obligations.  As such, Plaintiff is

entitled to receive punitive damages from NYCOM.

WHEREFORE, Plaintiff demands judgment against Defendants, where applicable, for all compensatory, emotional, physical, payments for relevant medical bills, and punitive damages, lost pay, front pay, and injunctive relief, to the extent such relief is permitted by law and consistent with this Court's rulings.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.  Plaintiff demands a trial by jury.

Dated:  August 17, 2015
      Carle Place, New York

                        Respectfully submitted:

                        LEEDS BROWN LAW, P.C.
                        *Attorneys for Plaintiff*
                        One Old Country Road, Suite 347
                        Carle Place, New York 11514
                        (516) 873-9550

                        By: _____/s/_____
                              RICK OSTROVE